# Exhibit G

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re the Application of: | |
| Inventors: Richard Lowenthal et al. | Group Art Unit: 1623 |
| Appln. No.: 16/420,044 | Examiner: Shiao, Yih-Horng |
| Filed: May 22, 2019 | Confirmation No.: 9239 |
| Title: INTRANASAL EPINEPHRINE FORMULATIONS AND METHODS FOR THE TREATMENT OF DISEASE | Customer No.: 021971 |

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RESPONSE TO PRE-INTERVIEW COMMUNICATION DATED SEPTEMBER 09, 2019**

Commissioner:

This paper responds to the Pre-Interview Communication dated September 09, 2019. The Commissioner is hereby authorized to charge any underpayment or credit any overpayment in connection with the filing of this response to Deposit Account No. 23-2415, referencing Attorney Docket No. 55358-701.302.

**Amendments to the Claims** begin on page **2** of this paper.

**Remarks** begin on page 7 of this paper.

**Conclusion** is on page **9** of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims replaces all prior versions and listing of claims in the above-referenced patent application. Deletions are denoted by [[]] or [~~strikethrough~~] and additions are denoted by underline.

1. (**Currently Amended**) A method of treatment of a type-1 hypersensitivity reaction in a mammal comprising the intranasal administration of an aqueous nasal spray pharmaceutical formulation; wherein the aqueous nasal spray pharmaceutical formulation comprises:

   an anaphylaxis treating agent, wherein the anaphylaxis treating agent consists of between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof[[,]] in a single dose ~~of the aqueous nasal spray pharmaceutical formulation~~.

2. (**Currently Amended**) The method of claim 1, wherein:

   the [[type 1]] type-1 hypersensitivity reaction is chosen from allergic asthma, allergic conjunctivitis, allergic rhinitis, anaphylaxis, angioedema, urticaria, eosinophilia, drug allergy ~~and~~ or food allergy; and

   the aqueous nasal spray pharmaceutical formulation comprises between about 0.4 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single dose of the aqueous nasal spray pharmaceutical formulation.

3. (**Currently Amended**) The method of claim 1, wherein:

   intranasal administration of [[a]] the single dose of the aqueous nasal spray pharmaceutical formulation to ~~a subject~~ the mammal provides a plasma epinephrine concentration that is efficacious for the treatment of anaphylaxis.

4. (**Currently Amended**) The method of claim 3, wherein:

   ~~the single dose of the aqueous nasal spray pharmaceutical formulation is delivered by a nasal spray device; and~~

   about 100 μL of the aqueous nasal spray pharmaceutical formulation is delivered to the mammal in one actuation of ~~the~~ a nasal spray device.

5. (**Currently Amended**) The method of claim 3, wherein:

[[a]] the single dose of the aqueous nasal spray pharmaceutical formulation comprises between about 0.5 mg and about 1.5 mg of epinephrine, or a salt thereof.

6. **(Currently Amended)** The method of claim 3, wherein:

[[a]] the single dose of the aqueous nasal spray pharmaceutical formulation comprises between about 0.5 mg and about 0.7 mg of epinephrine, or a salt thereof; about 1.0 mg of epinephrine, or a salt thereof; or between about 1.3 mg and about 1.5 mg of epinephrine, or a salt thereof.

7. **(Currently Amended)** The method of claim [[5]]1, wherein the aqueous nasal spray pharmaceutical formulation comprises:

between about 0.5 mg and about 1.5 mg of epinephrine, or a salt thereof;

one or more absorption enhancement agents; and

optionally one or more of other agents comprising the following: an isotonicity agent; a stabilizing agent; an antioxidant; a preservative; or and optional pH adjustment agents.

8. **(Currently Amended)** The method of claim 7, wherein the one or more absorption enhancers are selected from the group consisting of dodecyl maltoside, benzalkonium chloride, a fatty acid, or salt thereof, polysorbate 20, polysorbate 80, and sodium lauryl sulfate.

9. **(Currently Amended)** The method of claim 7, wherein the one or more absorption enhancement agents are selected from the group consisting of:

dodecyl maltoside;

benzalkonium chloride;

oleic acid, or salt thereof;

a combination of dodecyl maltoside and benzalkonium chloride;

a combination of dodecyl maltoside and oleic acid, or salt thereof; and

a combination of benzalkonium chloride and oleic acid, or salt thereof.

10. **(Currently Amended)** The method of claim 7, wherein the one or more absorption enhancement agents are selected from the group consisting of:

about 0.005% (w/v) to about 2.5% (w/v) dodecyl maltoside;

about 0.001 (w/v) to about 1% (w/v) benzalkonium chloride;

about 0.001 (w/v) to about 1% (w/v) oleic acid, or salt thereof;

a combination of about about 0.005% (w/v) to about 2.5% (w/v) dodecyl maltoside and about 0.001 (w/v) to about 1% (w/v) benzalkonium chloride;

a combination of about about 0.005% (w/v) to about 2.5% (w/v) dodecyl maltoside and about 0.001 (w/v) to about 1% (w/v) oleic acid, or salt thereof; and

a combination of about 0.001 (w/v) to about 1% (w/v) benzalkonium chloride and about 0.001 (w/v) to about 1% (w/v) oleic acid, or salt thereof.

11. (**Currently Amended**) The method of claim 7, wherein the one or more absorption enhancement agents are selected from:

about 0.005% (w/v) to about 0.08% (w/v) benzalkonium chloride;

about 0.01% (w/v) to about 0.06% (w/v) benzalkonium chloride; or

about 0.01% (w/v) to about 0.04% (w/v) benzalkonium chloride;

wherein the benzalkonium chloride is the sole absorption enhancement agent in the formulation or is [[in]] present in the formulation with one or more <u>other</u> absorption enhancement agents.

12. (**Original**) The method of claim 7, wherein the isotonicity agent is sodium chloride.

13. (**Original**) The method of claim 7, wherein the stabilizing agent is ethylenediaminetetraacetic acid (EDTA) or a salt thereof.

14. (**Original**) The method of claim 13, wherein the formulation comprises from about 0.001% (w/v) to about 1% (w/v) of disodium EDTA.

15. (**Original**) The method of claim 7, wherein the preservative is benzalkonium chloride.

16. (**Original**) The method of claim 7, wherein the aqueous nasal spray pharmaceutical formulation comprises pH adjustment agents and the aqueous nasal spray pharmaceutical formulation has a pH between about 2.0 and about 6.0.

17. (**Currently Amended**) The method of claim [[17]] <u>7</u>, wherein the pH adjustment agent is an acid, a base, a buffer, or a combination thereof.

18. (**Original**) The method of claim 5, wherein the aqueous nasal spray pharmaceutical formulation further comprises:

dodecyl maltoside, benzalkonium chloride, or a combination of dodecyl maltoside and benzalkonium chloride;

dextrose, glycerin, mannitol, potassium chloride, or sodium chloride;

ethylenediaminetetraacetic acid (EDTA) or a salt thereof; and

optional pH adjustment agents to adjust the pH of the aqueous nasal spray pharmaceutical formulation to a pH between about 2.0 and about 6.0.

19. **(Currently Amended)** The method of claim 3, wherein [[a]] <u>the</u> single dose of the aqueous nasal spray pharmaceutical formulation comprises:

between about 0.5 mg and about 1.5 mg of epinephrine;

dodecyl maltoside;

benzalkonium chloride;

ethylenediaminetetraacetic acid (EDTA) or a salt thereof;

sodium chloride;

water; and

optional pH adjustment agents to adjust the pH of the aqueous nasal spray pharmaceutical formulation to a pH between about 2.0 and about 6.0.

20. **(Currently Amended)** The method of claim 4, wherein [[a]] <u>the</u> single dose of the aqueous nasal spray pharmaceutical formulation comprises:

between about 0.4 mg and about 2.0 mg of epinephrine;

dodecyl maltoside;

benzalkonium chloride;

ethylenediaminetetraacetic acid (EDTA) or a salt thereof;

sodium chloride; and

optional pH adjustment agents to adjust the pH of the aqueous nasal spray pharmaceutical formulation to a pH between about 3.0 and about 5.0.

**REMARKS**

The following remarks are in response to the Pre-Office Action Communication dated September 9, 2019, and in light of the Examiner interview conducted on December 2, 2019. Claims 1-11, 17, and 19-20 are amended herein. No new matter has been added.

Reconsideration and withdrawal of the rejections raised in the Office Action are respectfully requested.

**Priority**

In the Pre-Office Action Communication dated September 9, 2019 the Examiner stated that the priority date of claims 1-20 is December 21, 2018, which is the filing date of U.S. Provisional application no. 62/784,057. Concurrent with the submission of this response, Applicant submits an amended Application Data Sheet that removes all priority claims to any application filed prior to December 21, 2018.

**Claim Objections**

The Office Action raised a plurality of objections to claim language with suggested amendments. For the sole purpose of expediting prosecution of the present application, Applicant has amended those claims as suggested by the Examiner. As a result, the claim objections should be withdrawn.

**Claim Rejections – 35 U.S.C. §112 - Indefiniteness**

The Office Action raised a plurality of indefiniteness rejections under 35 U.S.C. §112 and the Examiner provided suggested claim amendments that would overcome the rejections. For the sole purpose of expediting prosecution of the present application, Applicant has amended those claims as suggested by the Examiner. As a result, the indefiniteness objections should be withdrawn.

**Claim Rejections – 35 U.S.C. §102 (Anticipation) and 35 U.S.C. §103 (Obviousness)**

In the Office Action, the pending claims are rejected under 35 U.S.C. §102 as allegedly anticipated by Fleming (U.S. Patent Publication no. 2015/0005356) and under 35 U.S.C. §103 as

allegedly obvious over Fleming in light of Levitt (U.S. Patent Publication no. 2010/0209357). Applicant thanks the Examiner for discussing claim amendments that require the formulation to comprise an anaphylaxis treating agent that **consists of** between about 0.1 mg and about 2.4 mg of epinephrine, thereby excluding the COMT inhibitor and vasodilator used in combination with epinephrine to treat anaphylaxis. As noted during the interview by Applicant, and acknowledged by the Examiner, Fleming's disclosure focuses on the combination of epinephrine with the COMT inhibitor and/or vasodilator "to elicit a systematic therapeutic response during anaphylaxis." See, *e.g*. paragraphs [0015], [0017], and [0019] of Fleming. See also, formulation examples and claims of Fleming.

Turing to Levitt, Applicant notes that it fails to disclose "intranasal administration of an aqueous nasal spray pharmaceutical formulation." Instead, Levitt is directed to delivery of active agents to lower airways through local delivery (inhalation or direction instillation). In its Summary of Invention, Levitt states that:

> [0028] The present invention is drawn to methods and compositions for treating inflammatory disorders of the lower airway's, comprising administering an effective amount of an agent which modulates the expression and/or activity of a proinflammatory cytokine or fragment thereof, preferably in a human. In a preferred embodiment, the inflammatory disorder of the lower airways is chronic obstructive pulmonary disease (COPD).
>
> [0029] The agent may be administered via inhalation. In a preferred embodiment thereof, inhalation is carried out with a nebulizer, an inhaler, a sprayer, a powder dispenser or a dry powder generator. In another preferred embodiment, the agent is administered via direct instillation into the lower airways and in a specific embodiment thereof, direct instillation is carried out by intratracheal or mucosal administration. In a further embodiment, the direct instillation is carried out with an intrapulmonary aerosolizer or a sub-miniature aerosolizer.

One of the key aspects of Levitt's local drug delivery to the lower airway is the avoidance

of systemic exposure. For example, at the beginning of its Detailed Description, Levitt states that:

> [0036] The invention provides an article of manufacture and methods for formulating and treating lower airways disorders comprising administering to a mammal diagnosed as having COPD and in need of treatment an effective amount of a composition comprising: at least one proinflammatory cytokine inhibitor, pharmaceutically acceptable carrier, and a delivery device capable of **expressly delivering said compositions to the lower airways** avoiding the complications of systemic delivery.

As such, Levitt does not teach or suggest "intranasal administration of an aqueous nasal spray pharmaceutical formulation," as recited in the pending claims. Furthermore, there is no rationale to combine Fleming's purported nasal delivery with Levitt's expressly delivering to the lower airways as doing so would inevitably frustrate the "intended purpose" or "principle of operation" of the references. See MPEP 2143.01 VI ("[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious"). See also, MPEP 2143.01V ("[i]f proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification. In re Gordon, 733 F.2d 900, 221 USPQ 1125 (Fed. Cir. 1984).")

For reasons stated above, the combination of Fleming and Levitt does not teach or suggest intranasal administration of an aqueous nasal spray pharmaceutical formulation, wherein the aqueous nasal spray pharmaceutical formulation comprises an anaphylaxis treating agent **consisting of** between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof in a single dose, as recited in the amended claims. Thus, the anticipation rejections based on Fleming and the obviousness rejections based on combination of Fleming and Levitt should be withdrawn.

## CONCLUSION

Applicant submits that this response fully addresses the pre-Office Action communication dated September 9, 2019, and respectfully requests consideration and allowance of the amended claims.

Should the Examiner have any questions, Applicant requests the Examiner contact the undersigned at 858-350-2211. The Commissioner is hereby authorized to charge any fees that may be required in connection with this response, or credit any overpayment to Deposit Account No. 23-2415, referencing Attorney Docket No. 55358-701.302.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
A Professional Corporation

Date: December 13, 2019

By: /Valentin Zunic/
Valentin Zunic
Registration No. 74394

650 Page Mill Road
Palo Alto, CA 94304
(617) 598-7824 (direct)
Customer No. 021971