# Exhibit H

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

21971 7590 02/05/2020
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER | |
|---|---|
| SHIAO, YIH-HORNG | |
| ART UNIT | PAPER NUMBER |
| 1623 | |

DATE MAILED: 02/05/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/420,044 | 05/22/2019 | Richard LOWENTHAL | 55358-701.302 | 9239 |

TITLE OF INVENTION: INTRANASAL EPINEPHRINE FORMULATIONS AND METHODS FOR THE TREATMENT OF DISEASE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $250 | $0.00 | $0.00 | $250 | 05/05/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971 7590 02/05/2020

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

(Typed or printed name)

(Signature)

(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/420,044 | 05/22/2019 | Richard LOWENTHAL | 55358-701.302 | 9239 |

TITLE OF INVENTION: INTRANASAL EPINEPHRINE FORMULATIONS AND METHODS FOR THE TREATMENT OF DISEASE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $250 | $0.00 | $0.00 | $250 | 05/05/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SHIAO, YIH-HORNG | 1623 | 514-282000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 ____________________
2 ____________________
3 ____________________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted: ❏Issue Fee ❏Publication Fee (if required) ❏Advance Order - # of Copies ____________

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via EFS-Web ❏ Enclosed check ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. ________

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ______________________ Date ______________________

Typed or printed name ______________________ Registration No. ______________________

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/420,044 | 05/22/2019 | Richard LOWENTHAL | 55358-701.302 | 9239 |

21971 7590 02/05/2020

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER | |
|---|---|
| SHIAO, YIH-HORNG | |
| **ART UNIT** | **PAPER NUMBER** |
| 1623 | |

DATE MAILED: 02/05/2020

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

| *Notice Requiring Inventor's Oath or Declaration* | Application No.<br>16/420,044 | Applicant(s)<br>Richard LOWENTHAL | |
|---|---|---|---|
| | Examiner<br>SHIAO, YIH-HORNG | Art Unit<br>1623 | |

This notice is an attachment to the Notice of Allowability (PTOL-37), or the Notice of Allowability For A Design Application (PTOL-37D).

An inventor's oath or declaration in compliance with 37 CFR 1.63 or 1.64 executed by or with respect to each inventor has not yet been submitted.

An oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each inventor (for any inventor for which a compliant oath, declaration, or substitute statement has not yet been submitted) MUST be filed no later than the date on which the issue fee is paid. See 35 U.S.C. 115(f). Failure to timely comply will result in ABANDONMENT of this application.

A properly executed inventor's oath to declaration has not been received for the following inventor(s):

If applicant previously filed one or more oaths, declarations, or substitute statements, applicant may have received an informational notice regarding deficiencies therein.

The following deficiencies are noted:

INFORMAL ACTION PROBLEMS

- A properly executed inventor's oath or declaration has not been received for the following inventor(s): **Richard LOWENTHAL**, **Edward T. MAGGIO**, **Robert G. BELL**, and **Pratik SHAH**.
  Applicant may submit the inventor's oath or declaration at any time before the Notice of Allowance and Fee(s) Due, PTOL-85, is mailed.

Questions relating to this Notice should be directed to the Application Assistance Unit at 571-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>16/420,044 | **Applicant(s)**<br>LOWENTHAL et al. | |
|---|---|---|---|
| | **Examiner**<br>YIH-HORNG SHIAO | **Art Unit**<br>1623 | **AIA (FITF) Status**<br>Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1.☑ This communication is responsive to amendment filed on 12/13/2019.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ______.

2.☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.

3.☑ The allowed claim(s) is/are 1-20 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4.☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a) ☐All b) ☐ Some *c) ☐ None of the:

1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. ______ .
3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

* Certified copies not received: ______ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5.☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ______ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6.☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1.☐ Notice of References Cited (PTO-892)
2.☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 12/13/2019.
3.☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material ______.
4.☑ Interview Summary (PTO-413), Paper No./Mail Date. 01/29/2020.
5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other ______.

/YIH-HORNG SHIAO/
Primary Examiner, Art Unit 1623

***Examiner's Amendment***

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Grant Margulieux on January 29, 2020.

The amended claims are listed below.

**Claim 1**: Change the recitation "comprising the intranasal administration of" (line 2) to "comprising administering intranasally to the mammal in need thereof"; and replace the recitation "an anaphylaxis treating agent, wherein the anaphylaxis treating agent" (line 5) with "an anaphylaxis active ingredient, wherein the anaphylaxis active ingredient".

**Claim 2**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises" (line 5); and delete the recitation "of the aqueous nasal spray pharmaceutical formulation" (lines 6 to 7).

**Claim 5**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises" (line 2).

**Claim 6**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises" (line 2).

**Claim 7**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises:" (line 2).

**Claim 19**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises:" (line 2).

**Claim 20**: Insert the phrase "the anaphylaxis active ingredient consisting of" immediately after the recitation "formulation comprises:" (line 2).

**DETAILED ACTION**

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA. The amendment filed on 12/13/2019 has been entered. Claims 1-20 are currently under examination and allowed in this Office Action.

***Priority***

This application is a CON of PCT/US2019/016918 filed on 02/06/2019 and claims benefit of US Provisional Application No. 62/784,057 filed on 12/21/2018.

***Information Disclosure Statement***

The information disclosure statement (IDS) filed on 12/13/2019 has been considered.

***Withdrawn Claim Objections/Rejections***

The objection of claims 1-3, 5-11, 17, 19, and 20 because of incorrect recitation, as set forth on pages 3 to 4 of the Pilot-First Action mailed on 09/09/2019, is *withdrawn* in view of amended claims 1-3, 5-11, 17, 19, and 20.

The rejection of claims 4, 7-17, and 20 under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as set forth on pages 4 to 5 of the Pilot-First Action mailed on 09/09/2019, is *withdrawn* in view of amended claims 4, 7, and 11. Claim 20 depends from claim 4. Claims 8-10 and 12-17 depend from claim 7.

The rejection of claims 1-8, 12-14, 16, and 17 under 35 U.S.C. 102(a)(1) as being anticipated by Fleming, as set forth on pages 6-8 of the Pilot-First Action mailed on 09/09/2019, is *withdrawn* in view of amended claim 1. Claims 2-8, 12-14, 16, and 17 depend from claim 1.

The rejection of claims 1-20 under 35 U.S.C. 103 as being unpatentable Fleming in view of Levitt, as set forth on pages 9-13 of the Pilot-First Action mailed on 09/09/2019, is *withdrawn* in view of amended claim 1. Claims 2-20 depend from claim 1.

***Allowable Subject Matter***

The amended claim 1 is allowed. Claims 2-20, depending from claim 1, are also allowed.

The following is an examiner's statement of reasons for allowance: The amended claim 1, directed to A method of treatment of a type-1 hypersensitivity reaction in a mammal comprising administering intranasally to the mammal in need thereof an aqueous nasal spray pharmaceutical formulation; wherein the aqueous nasal spray pharmaceutical formulation comprises: an anaphylaxis active ingredient, wherein the anaphylaxis active ingredient consists of between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof in a single dose", is free of prior art rejection. The closest prior art is cited in the Pilot-First Action mailed on 09/09/2019, in which **Fleming** (US Patent Application Publication No. 2015/0005356, published on January 1, 2015) disclosed a method for treating anaphylaxis in an individual, comprising applying to the mucosa! surfaces of the nasal cavities of the individual a pharmaceutical composition comprising an antianaphylactic agent, the antianaphylactic agent in the composition is epinephrine, present in amounts ranging from 0.05 mg to 10 mg, preferably from 0.75 mg to 1.5 mg, in a single dose of epinephrine given intranasally. Table 3 shows customizable dosing for adults: Dosage is one spray, unless treatment failure or rebound anaphylaxis requires a second, to a maximum of four additional doses for refractory patient or rebound anaphylaxis (spray volume is targeted at 100 µL each spray):

| | Sprays total* | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | Adult Body weight (Kg) | | | |
| | ≥30 | ≥60 | ≥90 | ≥120 |
| Epinephrine actual dose: | 0.3 mg | 0.6 | 0.9 | 1.2 |
| Optimal Dose: | 0.3 mg | na | na | na |

. Suitable nasal pump spray devices include for instance, the VP50, VP70 and VP100 models available from Valois S. A. and the 50, 70 and 100 µl nasal pump sprays available from Pfeiffer GmbH. The intranasal epinephrine composition further comprises one or more or combination of additional agents selected from the group of epinephrine potentiator, a mucosal permeation enhancer, an agent that reduces mucosa! transit time, an agent that increases mucosal absorption or adhesion or transport, surfactants, chelators, pharmaceutically acceptable excipients, non-sulfite stabilizers, preservatives, thickening agents, humectants, solubilizing agents, taste and smell masking agents, antioxidant enzymes, viscosity enhancing agents, dispersing agents, colorants, or any combination thereof (page 5/16, [0027]; page 4/16, [0017-0019]; page 12/16, [0090]; page 11/16, [0088]). Aqueous epinephrine formulation targets a highly concentrated solution of epinephrine, so that the effective dose is about 100 uL and includes the use of alternative salts of the active drugs, as well as specific nasal mucosal tight junction permeation agents, including chelators (such as EDTA), surface-active agents (such as Tween-20 or Tween-80). An acid (e.g., sulfuric acid) may be added to adjust the pH of the solution to between 3.0 to about 4.0, preferably at about 3.5. An osmotic adjusting agent may be added to adjust the isotonicity of the solution. Example tonicifying agents for the suspension nanoformulation of epinephrine includes pharmaceutically acceptable sugars and other polyols (such as, trehalose, mannitol, and sorbitol) and salts (such as, sodium chloride) (page 15/16, [0118 to 0120]). An aqueous composition comprised of the following components (per 1 mL volume): 0.5-100 mg epinephrine (preferably, 0.5mg, 1.5 mg, or 1.75 mg), 1 mg polysorbate 80, 2 mg methylcellulose, 0.08 mg entacapone, 0.5 mg phentolamine

hydrochloride, sodium chloride q.s. to provide osmolality in the range of 200 to 350 mOsm/kg, and hydrochloric acid q.s. to adjust pH to 3.5-5.0. The formulations additionally contain 1 mg DDPC, 1 mg EDTA (= 0.1 wt%) and 10 mg methyl-beta-cyclodextrin as nasal permeation enhancers (page 14/16, [0100 and 0103]). The nasal permeation or nasal penetration enhancers include bile salts, alkyl glycoside, lipids (preferred lipids are glycosylated sphingosines, alkylglucosides), surfactants, cyclodextrin, or chelators, or any combination thereof. The permeation enhancers also include ethylene-diamine tetra-acetic acid (EDTA) and fatty acid. The absorption agents including sodium lauryl sulfate, sodium salicylate, oleic acid, lecithin, dehydrated alcohol, Tween, Span, polysorbate 20, polysorbate 80, a chelator such as EDTA, and combinations thereof. Agents for taste masking include glycerin (up to 2.5% in a marketed nasal solution), dextrose (5% in a marketed metered nasal spray), and phenethyl alcohol (up to 0.25% in a marketed metered nasal spray, also could serve as a preservative for multi-use) (page 7/16, [0042, 0043, 0045, and 0047]; page 8/16, [0054]). A process for making a nonsterile nasal solution with preservatives comprises one or more of the following steps: (1) adding at least a therapeutically effective pediatric or, alternatively adult, amount of epinephrine in a vehicle, such as water; (2) adding stabilizers such as benzalkonium chloride (BAC), and either sodium metabisulfite or ascorbic acids, in sufficient concentrations to achieve a 12-24 month shelf life or more (page 11/16, [0085]). **Levitt** (US Patent Application Publication No. 2010/0209357, published on August 19, 2010) disclosed to a pharmaceutical composition suitable for direct administration to the lower airways, comprising a therapeutically effective amount of at least one proinflammatory cytokine inhibitor, at least one-second active ingredient, and at least one pharmaceutically acceptable carrier. Examples of proinflammatory cytokine inhibitors useful in treating, managing, or ameliorating lower airways inflammation, include adrenergic stimulants, e.g., epinephrine. Other compounds may be used in a particular composition such as a surfactant and preservative. A composition comprises active ingredient in the form of a solution that may contain a stabilizing compound(s) and/or a preservative(s).

Surfactants are added to improve delivery and/or stability of the composition. Nonionic surfactant agents include: n-Dodecyl α-D-maltoside; n-Dodecyl ß-D-maltoside. Suitable surfactants also include soya lecithin and oleic acid. Surfactant can reduce or prevent surface-induced aggregation of the inhibitor caused by atomization of the solution in forming an aerosol. Amounts will generally range between 0.001 and 4% by weight of the formulation (page 5/35, [0034]; page 26/35, [0217]; page 12/35, [0105 to 0106]; page 18/35, [0141]; page 11/35, [0095]). Nonlimiting examples of preservatives include parabens, such as benzalkonium chloride. Examples of the pharmaceutically acceptable carrier include liquids such as saline, Ringer's solution and dextrose solution. The pH of the solution is preferably from about 5 to about 8. Examples of routes of administration within the lower airways include oral or nasal inhalation (e.g., inhalation of sufficiently small particles to be deposited expressly within the lower airways) in a single unit dosage form for administration to a mammalian subject (page 13/35, [0112 to 0113]; page 12/35, [0100]; page 11/35, [0092]). Pharmaceutically inert vehicles and/or excipients include, e.g., buffering agents such as boric acid or borates, pH adjusting agents to obtain optimal stability or solubility of the active compound, lactose as a carrier, tonicity adjusting agents such as sodium chloride or borates (page 20/35, [0153]). **However**, the references did not teach or suggest the recitation “the anaphylaxis active ingredient consists of between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof in a single dose”, required by claim 1 and limited by the closed transitional phrase “consists of” to exclude other anaphylaxis active ingredient, such as epinephrine potentiator or a reversible COMT inhibitor to arrest mucosal enzymatic degradation of epinephrine, or a vasodilator; and to exclude other amount of epinephrine. Additional search found close art of intranasal spray comprising epinephrine and bronchodilator, but not epinephrine alone, as anaphylaxis active ingredient.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled “Comments on Statement of Reasons for Allowance.”

## *Conclusion*

Claims 1-20 are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YIH-HORNG SHIAO whose telephone number is (571)272-7135. The examiner can normally be reached on Mon-Thur, 08:30 am to 07:00 pm EST.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Shaojia (Anna) Jiang can be reached on 571-272-0627. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/YIH-HORNG SHIAO/
Primary Examiner, Art Unit 1623