# PUBLIC EXHIBIT 12

8713924

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*May 04, 2026*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** ***17/396,044***
**FILING DATE:** ***August 06, 2021***
**PATENT NUMBER:** ***11744895***
**ISSUE DATE:** ***September 05, 2023***

UNITED STATES PATENT AND TRADEMARK OFFICE · DEPARTMENT OF COMMERCE

Certified by

DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

***Electronically Filed On: May 5, 2023***

**PATENT**
**WSGR Docket No. 55358-701.305**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Application: Aegis Therapeutics, LLC | ) | |
| | ) | |
| Inventors: Richard Lowenthal, *et al.* | ) | Confirmation No.: 3356 |
| | ) | |
| Application No.: 17/396,044 | ) | Art Unit: 1623 |
| | ) | |
| Filed: August 6, 2021 | ) | Examiner: Shiao, Yih-Horng |
| | ) | |
| Title: INTRANASAL EPINEPHRINE FORMULATIONS AND METHODS FOR THE TREATMENT OF DISEASE | ) | Customer No.: 21971 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**AMENDMENT AND RESPONSE TO NON-FINAL OFFICE ACTION**

Dear Commissioner:

This paper is in response to the Non-Final Office Action dated November 22, 2022, setting an initial due date of February 22, 2023. With payment of a 3-month extension of time fee, the due date for response has been extended to May 22, 2023. Therefore, this response is timely filed.

**Amendments to the Claims** begin on page **2** of this paper.

**Remarks** begin on page **10** of this paper.

A **Conclusion** is on page **14** of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings of claims in this application. Applicant reserves the right to pursue any canceled subject matter in this or any other appropriate patent application.

**Listing of the Claims**

1-20. (**Canceled**).

21. (**Currently Amended**) A method of treatment of a type-1 hypersensitivity reaction in a human comprising an intranasal administration of a pharmaceutical formulation comprising between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose to the human ~~with a type-1~~ with the type-1 hypersensitivity reaction;

~~wherein the pharmaceutical formulation comprises between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose;~~

~~wherein the pharmaceutical formulation does not comprise a degradative enzyme inhibitory agent; and~~

~~wherein the pharmaceutical formulation does not comprise a vasodilator agent.~~

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation; and

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of the type-1 hypersensitivity reaction; or

wherein intranasal administration of the single administered dose of pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of the symptoms of the type-1 hypersensitivity reaction.

22. (**Currently Amended**) A method of treatment of a ~~The method of claim 21, wherein the~~ type-1 hypersensitivity reaction in a human, comprising an intranasal administration of a pharmaceutical formulation comprising between about 0.1 mg and about 2.4 mg of

epinephrine, or a salt thereof, in a single administered dose, to the human in need thereof;

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation;

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of ~~is chosen from~~ allergic asthma, allergic conjunctivitis, allergic rhinitis, anaphylaxis, angioedema, urticaria, or eosinophilia~~, drug allergy or food allergy~~; or

wherein intranasal administration of the single administered dose of pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of allergic asthma, allergic conjunctivitis, allergic rhinitis, anaphylaxis, angioedema, urticaria, or eosinophilia; and

wherein the type-1 hypersensitivity reaction is caused by stinging insects, biting insects, allergen immunotherapy, foods, drugs, diagnostic testing substances and other allergens.

23. (**Currently Amended**) A method of treatment of ~~The method of claim 21, wherein the type-1 hypersensitivity is~~ allergic asthma in a human, comprising an intranasal administration of a pharmaceutical formulation comprising between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose, to the human in need thereof;

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation; and

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of allergic asthma; or

wherein intranasal administration of the single administered dose of pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that

is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of allergic asthma.

24. (**Currently Amended**) A method of treatment of ~~The method of claim 21, wherein the type 1 hypersensitivity reaction is~~ urticaria in a human, comprising an intranasal administration of a pharmaceutical formulation comprising between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose to the human in need thereof;

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation; and

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of urticaria; or

wherein intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of urticaria.

25. (**Currently Amended**) The method of ~~claim 21~~ claim 24, wherein the pharmaceutical formulation comprises about 0.5 mg, about 0.6 mg, about 0.7 mg, about 0.8 mg, about 0.9 mg, about 1.0 mg, about 1.1 mg, about 1.2 mg, about 1.3 mg, about 1.4 mg, about 1.5 mg, about 1.6 mg, about 1.7 mg, about 1.8 mg, about 1.9 mg, about 2.0 mg, about 2.1 mg, about 2.2 mg, about 2.3 mg, or about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose.

26. (**Currently Amended**) The method of ~~claim 21~~ claim 24, wherein the pharmaceutical formulation comprises about 0.3 mg, about 0.5 mg, about 1.0 mg, or about 2.0 mg of epinephrine, or a salt thereof, in a single administered dose.

27. (**Currently Amended**) The method of ~~claim 21~~ claim 24, wherein the pharmaceutical formulation comprises about 1.0 mg or about 2.0 mg of epinephrine, or a salt thereof, in a single administered dose.

28. (**Currently Amended**) The method of ~~claim 21~~ claim 24, wherein the pharmaceutical formulation further comprises one or more of other agents as excipients selected from the group consisting of: absorption enhancement agents, isotonicity agents, stabilizing agents, antioxidants, preservatives, and pH adjustment agents.

29. (**Previously Presented**) The method of claim 28, wherein the absorption enhancement agents are selected from the group consisting of surfactants, fatty acids, bile salts, cyclodextrins, phospholipids, and alcohols.

30. (**Previously Presented**) The method of claim 28, wherein the absorption enhancement agents are selected from the group consisting of alkylglycosides, polysorbate 20, polysorbate 80, oleic acid, salt of oleic acid, sodium lauryl sulfate, sodium glycocholate, sodium taurocholate, and sodium taurodihydrofusidate.

31. (**Previously Presented**) The method of claim 28, wherein the absorption enhancement agents are selected from the group consisting of undecyl maltoside, dodecyl maltoside, tridecyl maltoside, tetradecyl maltoside, sucrose mono-dodecanoate, sucrose mono-tridecanoate, and sucrose mono-tetradecanoate.

32. (**Previously Presented**) The method of claim 28, wherein the absorption enhancement agent is an alkylglycoside.

33. (**Previously Presented**) The method of claim 28, wherein the absorption enhancement agent is dodecyl maltoside.

34. (**Canceled**).

35. (**Previously Presented**) The method of claim 28, wherein the isotonicity agents are selected from the group consisting of dextrose, glycerin, mannitol, potassium chloride, and sodium chloride.

36. (**Previously Presented**) The method of claim 28, wherein the antioxidants are selected from the group consisting of alpha tocopherol, D-α-tocopherol polyethylene glycol 1000 succinate, ascorbic acid, isoascorbic acid, butylated hydroxyanisole (BHA), citric acid monohydrate, potassium metabisulfite, sodium bisulfite, sodium metabisulfite, and sodium sulfite.

37. (**Previously Presented**) The method of claim 28, wherein the pharmaceutical formulation is a water, water-ethanol, or water-propylene glycol solution; and wherein

the total volume of the single administered dose of pharmaceutical formulation is about 25 µL, about 50 µL, about 75 µL, about 100 µL, about 125 µL, about 150 µL, about 175 µL, about 200 µL, or about 250 µL.

38. (**Previously Presented**) The method of claim 28, wherein the pharmaceutical formulation is a water solution; and wherein the total volume of the single administered dose of pharmaceutical formulation is about 25 µL, about 50 µL, about 75 µL, about 100 µL, about 125 µL, about 150 µL, about 175 µL, about 200 µL, or about 250 µL.

39. (**Currently Amended**) A method of treatment of anaphylaxis or acute asthmatic attacks in a human comprising an intranasal administration of a pharmaceutical formulation to the human with anaphylaxis or acute asthmatic attacks;

wherein the pharmaceutical formulation comprises between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose;

~~wherein the pharmaceutical formulation does not comprise a degradative enzyme inhibitory agent; and~~

~~wherein the pharmaceutical formulation does not comprise a vasodilator agent~~

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation;

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of anaphylaxis or acute asthmatic attacks; or

wherein intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of anaphylaxis or acute asthmatic attacks.

40. (**Previously Presented**) The method of claim 39, wherein the pharmaceutical formulation comprises about 0.3 mg, about 0.5 mg, about 1.0 mg, or about 2.0 mg of epinephrine, or a salt thereof, in a single administered dose.

41. (**Previously Presented**) The method of claim 39, wherein the pharmaceutical formulation comprises about 0.5mg, about 0.6 mg, about 0.7 mg, about 0.8 mg, about 0.9

mg, about 1.0 mg, about 1.1 mg, about 1.2 mg, about 1.3 mg, about 1.4 mg, about 1.5 mg, about 1.6 mg, about 1.7 mg, about 1.8 mg, about 1.9 mg, about 2.0 mg, about 2.1 mg, about 2.2 mg, about 2.3 mg, or about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose.

42. (**Currently Amended**) The method of claim 39, wherein the ~~intranasal administration of the pharmaceutical formulation to the human with anaphylaxis alleviates one or more~~ symptoms ~~of anaphylaxis~~ are selected from the group consisting of hives, generalized itching, nasal congestion, wheezing, difficulty breathing, cough, cyanosis, lightheadedness, dizziness, confusion, slurred speech, rapid pulse, palpitations, nausea ~~and~~ or vomiting, abdominal pain or cramping, skin redness or inflammation, nasal flaring, and intercostal retractions.

43. (**Previously Presented**) The method of claim 39, wherein the pharmaceutical formulation further comprises one or more of other agents as excipients selected from the group consisting of: absorption enhancement agents, isotonicity agents, stabilizing agents, antioxidants, preservatives, and pH adjustment agents.

44-47. (**Canceled**).

48. (**Currently Amended**) The method of claim 43, wherein:

the absorption enhancement agents are selected from the group consisting of alkylglycosides, polysorbate 20, polysorbate 80, oleic acid, salt of oleic acid, sodium lauryl sulfate, sodium glycocholate, sodium taurocholate, and sodium taurodihydrofusidate;

the isotonicity agents are selected from the group consisting of dextrose, glycerin, mannitol, potassium chloride, and sodium chloride; and

the antioxidants are selected from the group consisting of alpha tocopherol, D-α-tocopherol polyethylene glycol 1000 succinate, ascorbic acid, isoascorbic acid, butylated hydroxyanisole (BHA), citric acid monohydrate, potassium metabisulfite, sodium bisulfite, sodium metabisulfite, and sodium sulfite.

49. (**Previously Presented**) The method of claim 43, wherein the pharmaceutical formulation is a water, water-ethanol, or water-propylene glycol solution; and wherein the total volume of the single administered dose of pharmaceutical formulation is about

25 µL, about 50 µL, about 75 µL, about 100 µL, about 125 µL, about 150 µL, about 175 µL, about 200 µL, or about 250 µL.

50. **(New)** A method of treatment of a type-1 hypersensitivity reaction in a human, comprising an intranasal administration of a pharmaceutical formulation comprising between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose, to the human in need thereof;

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation; and

wherein the intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms selected from generalized hives, itching, flushing, angioedema, a burning sensation of the skin, swelling of the tongue or throat, shortness of breath, wheezes, coronary artery spasm, myocardial infarction, dysrhythmia, cardiac arrest, tachycardia, or bradycardia;

wherein intranasal administration of the single administered dose of pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms selected from generalized hives, itching, flushing, angioedema, a burning sensation of the skin, swelling of the tongue or throat, shortness of breath, wheezes, coronary artery spasm, myocardial infarction, dysrhythmia, cardiac arrest, tachycardia, or bradycardia.

51. **(New)** A method of treatment of idiopathic anaphylaxis or exercise-induced anaphylaxis in a human comprising an intranasal administration of a pharmaceutical formulation to the human with idiopathic anaphylaxis or exercise-induced anaphylaxis;

wherein the pharmaceutical formulation comprises between about 0.1 mg and about 2.4 mg of epinephrine, or a salt thereof, in a single administered dose;

wherein epinephrine, or a salt thereof, is the only pharmaceutically active ingredient in the pharmaceutical formulation;

wherein the intranasal administration of the single administered dose of the

pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the elimination of one, more than one, or all of the symptoms of anaphylaxis; or

wherein intranasal administration of the single administered dose of the pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of anaphylaxis.

# REMARKS

## Status of the Claims

Claims 21-28, 39 and 42 are amended. Claims 34, 44-47 are canceled. Applicant reserves the right to pursue any canceled subject matter in this or any other appropriate patent application. New claims 50 and 51 are added. Support for the amendments is found in the claims and throughout the application as filed. No new matter is added.

Upon entry of the proposed amendments, claims 21-33, 35-43 and 48-51 will be under examination.

## Priority

This application is a continuation of U.S. patent application no. 16/869,461 filed on 05/07/2020, now U.S. Patent no. 11,191,838, which is a continuation of U.S. patent application no. 16/420,044 filed on 05/22/2019, now U.S. Patent no. 10,682,414, which is a continuation of international application no. PCT/US2019/016918 filed on 02/06/2019, which claims benefit of U.S. provisional application no. 62/784,057 filed on 12/21/2018.

## Final Written Decision *inter partes* review (IPR) of U.S. Patent no. 10,682,414 ('414 patent)

Claims 1-20 of Applicant's corresponding U.S. Patent No. 10,682,414 B2 ('414 Patent) was challenged in an *inter partes* review (IPR) (see Final Written Decision of IPR2021-01324 dated February 9, 2023; a copy is submitted in the Information Disclosure Statement that accompanies this response). The PTAB concluded that claims 3-6, and 18-20 remain patentable in view of Potta (US 2018/0289617; referred herein as Potta '617) and the other references cited therein. A copy of the Final Written Decision was included in the Information Disclosure Statement submitted on April 24, 2023.

## Objections to the Claims

Claims 21 and 42 are objected to because of the following informalities and the Office requests that the recitation "with a type-1" (line 3) in claim 21 be changed to "with the type-1", and that the recitation "nausea and vomiting" (lines 5 to 6) in claim 42 be changed to "nausea or vomiting". In response, Applicant has amended claims 21 and 42 as requested by the Office.

**Claims Rejections Under 35 U.S.C. §102**

Claims 21, 22, 25-30, 35-43, 48, and 49 are rejected under 35 U.S.C. 102(a)(1) as allegedly being anticipated by Potta *et al*. (US 2018/0289617, hereinafter referred to as Potta '617). The Office alleges that Potta '617 "anticipate Applicant's claims 21, 22, 25-30, 35-43, 48, and 49 because the claimed "about 0.1 mg and about 2.4 mg", equivalent to 0.08 mg to 2.88 mg according to the definition of "about" in the specification, encompasses 1.0 (= 1.0 ± 0.1) and 2.7 (= 3.0 - 0.3) of Potta '617." (See Office Action dated November 22, 2022 on page 6). Applicant respectfully disagrees.

**The Instant Claims**

The instant claims have six independent claims, namely independent claims 21-24, 39, 50 and 51. Each independent claim recites that the intranasal administration of the nasal spray pharmaceutical formulation to the human provides a plasma epinephrine concentration in the human that is 1) efficacious for the elimination of one, more than one, or all of the symptoms; or 2) efficacious for the prevention of the further progression of one, more than one, or all of the symptoms of the recited condition(s) in the human.

Thus, the plain language of the independent claims require, at a minimum, that intranasal administration "provides an efficacious plasma epinephrine concentration."

**Potta '617 Does Not Disclose Actual Administration of the Formulations the Office Relies on for Anticipation**

The Office relies on a theory of inherent anticipation to conclude that Potta '617 satisfies the limitations of independent claims 21 and 39 of providing a plasma epinephrine concentration. "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation…" (*Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002)). "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." (*Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002)). Therefore, if the teachings of the prior art can be practiced in a way that yields a product lacking the allegedly inherent property, the prior art in question does not inherently anticipate. (See *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047-48 (Fed. Cir. 1995)).

Potta '617 does not disclose actual administration of the formulations the Office relies on for anticipation, and thus does not disclose any information on whether their administration *necessarily* provides a plasma epinephrine concentration. Applicant describes in the instant specification that that not every attempt at intranasal epinephrine administration results in a plasma epinephrine concentration. For example, paragraphs [0082] to [0084] and Table 1 states that: "Srisawat showed that significant systemic absorption of epinephrine via the IN route was observed only at 5 mg" and that "Srisawat *et al*. observed no blood level of epinephrine at the intranasal dose level of 2.5 mg and below." Therefore, Potta '617 does not and cannot anticipate independent claims 21 and 39. As a result, Potta '617 does not and cannot anticipate the claims that are dependent upon independent claims 21 and 39.

**<u>The PTAB Concluded that Potta '617 Does Not Inherently Disclose "Plasma Epinephrine Concentrations"</u>**

The PTAB concluded that claim 3 of the '414 Patent, which recites "*provides a plasma epinephrine concentration that is efficacious for the treatment*" is not anticipated by Potta '617 (see pages 35 and 36 of the Final Written Decision of IPR2021-01324). Therefore, for the same reasons that the PTAB articulated in the Final Written Decision of IPR2021-01324, Potta '617 does not and cannot anticipate independent claims 21 and 39. As a result, Potta '617 does not and cannot anticipate the claims that are dependent upon independent claims 21 and 39.

Removal of the anticipation rejection is respectfully requested.

**<u>Claims Rejections Under 35 U.S.C. §103</u>**

Claims 21-49 are rejected under 35 U.S.C. 103 as being unpatentable over Potta *et al.* (US 2018/0289617, hereinafter referred to as Potta '617) in view of Fleming (US 2015/0005356, hereinafter referred to as Fleming '356).

As described above, Potta '617 does not disclose actual administration of the formulations the Office relies on for anticipation, and thus Potta '617 does not disclose actual administration of the formulations the Office relies on for obviousness. Also, the PTAB in its Final Written Decision of IPR2021-01324 concluded that claim 3 of the '414 Patent, which recites "*provides a plasma epinephrine concentration that is efficacious for the treatment*", is not obvious in view of Potta '617.

Fleming describes an attempt to provide intranasal formulations that "permits lowering the epinephrine loading dose" by the ***addition of a second or third pharmaceutically active agent*** such as a "reversible topically-acting COMT inhibitor (to prevent epinephrine enzymatic degradation at the nasal mucosa)" and/or a "topically-acting vasodilator" in order for the "resulting nasal route of administration to achieve systemic epinephrine in therapeutic doses sufficient to treat anaphylaxis" (see, e.g., paragraphs [0015], [0017], [0019], [0035], and Examples 1 to 5 of Fleming '356).

Based on the combined teachings, Fleming '356 postulates that it might be possible to lower the higher intranasally administered doses of epinephrine, namely 3 mg or higher, that are taught in Potta '617 by adding to the intranasal formulations a degradative enzyme inhibitory agent and/or a vasodilator agent. It is noteworthy that no actual working Examples or results are described in Fleming '356 to verify whether or not the hypothesis described therein is true.

In contrast to the combined teachings of Potta '617 and Fleming '356, Applicant's method of treatment claims precludes the possibility of intranasally administering pharmaceutical formulations with a degradative enzyme inhibitory agent and/or a vasodilator agent as taught by Fleming '356. Therefore, the instant claims are not obvious in view of Potta '617 and Fleming '356. Reconsideration and removal of this rejection is respectfully requested.

**Double Patenting**

Claims 21-49 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1, 2, 4-8, 10, 12, and 18 of US 10,682,414 ("Lowenthal").

In response to this nonstatutory double patenting rejection Applicant submits a terminal disclaimer over U.S. Patent No. 10,682,414, thereby rendering this nonstatutory double patenting rejection moot.

Claims 21-49 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-3, 6, 10, and 18 of U.S. Patent No. 11,191,838. While not agreeing with the grounds of this rejection, and solely to expedite prosecution to allowance, Applicant submits a terminal disclaimer over U.S. Patent No. 11,191,838, thereby rendering this nonstatutory double patenting rejection moot.

## CONCLUSION

In light of the remarks set forth above, Applicant believes that the pending claims are in condition for allowance. Applicants respectfully solicit the Examiner to expedite the prosecution of this patent application to issuance. Should the Examiner have any questions, the Examiner is encouraged to telephone the undersigned at (858) 350-2211.

The Commissioner is authorized to charge any underpayment or credit any overpayment to Deposit account No. 23-2415 (WSGR Docket No. 55358-701.305).

Respectfully submitted,

Date: May 5, 20223 By: /Valentin Zunic/
Valentin Zunic, Reg. No. 74,394

WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone: (858) 350-2211
Customer No. 21971